IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY E., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 20-cv-00718 |
| v. ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Anthony E. ("Claimant") brings a motion to reverse the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI"). The Commissioner brings a motion for summary judgment seeking to uphold the decision to deny benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §1383(c)(3). For the reasons discussed herein, Claimant's motion to reverse the decision of the Commissioner, (Dckt. #29), is granted and the Commissioner's motion for summary judgment, (Dckt. #32), is denied.

**I. BACKGROUND**

Claimant received SSI benefits as a child due to limitations from bilateral hearing loss. When he reached the age of eighteen, Claimant's eligibility for these benefits was reconsidered based on the adult disability standards and, on December 11, 2015, it was determined that Claimant was no longer disabled as of December 1, 2015. (Administrative Record ("R.") 21).

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by his first name and the first initial of his last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

This determination was upheld on reconsideration. Claimant filed a timely request for a hearing, which was held on August 1, 2018, before Administrative Law Judge ("ALJ") David Skidmore. (R. 33-47). Claimant appeared without counsel. On December 24, 2018, the ALJ issued a written decision denying Claimant's application for benefits. (R. 19-28). Claimant filed a timely request for review with the Appeals Council. The Appeals Council denied Claimant's request for review on December 11, 2019, (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

      **B.**    **The Social Security Administration Standard**

To qualify for disability benefits, a claimant must demonstrate that he is disabled, meaning he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at

2

*2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that he has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month durational requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, he is considered disabled and no further analysis is required. If a listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), meaning his exertional and non-exertional capacity to work despite the limitations imposed by his impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id.* If he cannot undertake his past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given his RFC, age, education, and work experience. If such jobs exist, the individual is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

    **C.**    **The Evidence Presented to the ALJ**

Claimant seeks SSI benefits due to limitations from bilateral hearing loss and unspecified learning disabilities. Because the only issues raised by Claimant in the instant case relate to his learning disabilities, the Court will limit its discussion of the evidence accordingly.

### 1. Evidence from Claimant's School Records

Due to Claimant's specific learning needs, he received Individual Education Program ("IEP") assessments throughout high school. (R. 265-88, 289-93, 294-95). Claimant also received special education instruction and required various learning accommodations.

During a 2010 psychological evaluation, Claimant's IQ was found to be in the fourth percentile, which is considered "borderline" intellectual functioning. (R. 291). However, his performance "indicated average cognitive abilities when language skills were not required." (*Id.*). In 2013, when Claimant was fifteen years old and in ninth grade, the Kaufman Test of Educational Achievement indicated that Claimant was "below average" in all areas tested and only in the sixth percentile overall. (R. 289). Claimant's IEP from the same year indicated that he was functioning below grade level expectations in all core academic areas. (R. 290).

Claimant's IEP was reassessed in May 2015, when Claimant was in the tenth grade. At that time, the evaluator indicated that Claimant struggled to learn new materials in math class "and need[ed] information retaught to him several times for him to have a basic understanding of the task at hand." (R. 266). Claimant also demonstrated a relative weakness in reading and writing, but "was able to read a question or statement and answer questions directly and correctly." (*Id.*). It was noted that Claimant was "able to follow basic one and two step directions independently." (R. 271).

Two years later, when Claimant was in the twelfth grade, one of his teachers, J. Walker, completed a teacher questionnaire on Claimant's behalf. She indicated that Claimant had a "very serious problem" understanding and participating in class discussions and providing organized oral explanations and adequate descriptions; a "serious problem" comprehending oral instructions; an "obvious problem" understanding school and content vocabulary and reading

and comprehending written material; and a "slight problem" comprehending and doing math problems, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (R. 202). Walker did not complete the questionnaire's "attending and completing tasks" section except to note that Claimant had "a very serious problem" carrying out multi-step instructions. (R. 203).

### 2. Evidence from Examining Physicians

On November 18, 2015, consulting examiner Don White, Ph.D. completed a psychological evaluation of Claimant related to his application for benefits. He found that Claimant was well-oriented to time, place, and person and had no impairment in immediate, recent, or remote memory functioning. (R. 310-11). He also determined that Claimant had a functional fund of information, a functional ability to do calculations, and fair judgment, although his abstract thinking and ability to analyze and synthesize data were impaired. (R. 311). Dr. White made no findings regarding any specific functional limitations.

On April 11, 2016, when Claimant was eighteen years old, examining consultant Daniel Louis Friedman, Psy.D., also completed a psychological evaluation of Claimant. (R. 342). When Dr. Friedman administered the Leiter International Performance Scale, a non-verbal assessment of cognitive functioning, Claimant's overall score was an eighty-six, which indicated below average skills associated with visual scanning, visual closure, non-verbal reasoning, and sequential pattern recognition. (R. 343).

### 3. Evidence from State Agency Consultants

State agency consultant Leslie Fyans, Ph.D., reviewed Claimant's file on December 7, 2015. She found that Claimant's learning disability was severe. (R. 312). According to Dr. Fyans, Claimant exhibited mild limitations in activities of daily living and maintaining social

functioning, as well as moderate limitations in concentration, persistence, and pace. (R. 322). She further found that Claimant was moderately limited in his ability to understand, remember, and carry out detailed instructions, and maintain attention and concentration for extended periods. (R. 326). She concluded that Claimant's "adaptive and interpersonal and cognitive resources are capable of doing one and two step unskilled tasks." (R. 328).

State agency consultant Lionel Hudspeth, Psy.D., reviewed Claimant's file on April 22, 2016. Unlike Dr. Fyans, Dr. Hudspeth found Claimant's learning disability to be non-severe, (R. 352), and concluded that it caused only mild limitations in his ability to complete activities of daily living, maintain social functioning, and in concentration, persistence, and pace. (R. 362).

### 4. Evidence from Claimant and Hearing Testimony

In a June 12, 2015 function report, Claimant indicated that he had difficulty with concentration and completing tasks. (R. 197). During the hearing, at which Claimant appeared without counsel, the ALJ asked Claimant whether he has "any other health issues that [he believes] impact [his] ability to work apart from [his] bilateral hearing loss." (R. 39). Claimant responded, "No, sir." (*Id.*). However, when the ALJ later asked Claimant whether he would be able to work in a job where communication was face-to-face – thus accounting for his hearing limitations – Claimant responded that he would probably not because he would be unable to "pay[] attention to too many people to try to get me to do things." (R. 41). When asked to elaborate, Claimant said he would have trouble following multiple orders: "If one person tells me to do this and another person try to tell me to do something, I probably wouldn't be able to do it." (*Id.*). When the ALJ asked Claimant's mother to describe the barriers to Claimant entering the workforce, she said, "He would not be able to focus." (R. 42).

6

### D.     The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching his decision to deny Claimant's request for benefits. Because step one – which relates to individuals engaging in substantial gainful activity – is not applied when redetermining disability after a claimant turns eighteen, the ALJ began with step two. (R. 20). At step two, the ALJ determined that Claimant suffered from the severe impairment of bilateral hearing loss. (R. 21). He also found that Claimant's learning disorder was medically determinable, but non-severe. (*Id.*). At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments. (R. 22).

Before turning to step four, the ALJ determined that Claimant had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> Can perform no driving; can never work at unprotected heights or [with] dangerous, moving machinery; is limited to a work environment with no more than a moderate noise level; and is limited to occupations where oral communications take place face-to-face.

(R. 20). At step four, the ALJ determined that Claimant has no past relevant work. (R. 26). At step five, the ALJ concluded that a sufficient number of jobs exist in the national economy that Claimant can perform given his RFC, age, education, and experience, including the representative jobs of "cleaner, housekeeper," "cleaner, hospital," and "counter supply worker." (R. 27). As such, the ALJ found that Claimant was not disabled. (*Id.*).

## II.    STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial

7


evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or by otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

### III.   ANALYSIS

Claimant argues that the ALJ failed to adequately support his finding that Claimant's learning disorder was non-severe and failed to account for any limitations stemming from Claimant's learning disorder in the RFC analysis. The Court agrees on both counts.

> **A.** **The ALJ's finding that Claimant's learning disability is a non-severe impairment is not supported by substantial evidence.**

At step two of the analysis, the ALJ concluded that Claimant's learning disability causes "no more than 'mild' limitation[s]" in any of the four broad areas of mental functioning known as the paragraph B criteria. (R. 22). In making this finding, the ALJ enumerated evidence related to Claimant's learning disability without explaining what evidence related to which functional category or how any of the evidence supported a finding that Claimant has only mild limitations in any category. As such, the ALJ failed to build an accurate and logical bridge between the evidence and his paragraph B conclusions. *See Anthony G. v. Kijakazi*, No. 20-cv-7686, 2022 WL 2237133, at *2 (N.D.Ill. June 22, 2022) ("Typically, ALJs separate the analysis of the Paragraph B criteria by evaluating each criterion separately and citing the evidence that supports the ALJ's conclusion. . . . In this case, the Court is left to sift through a pile of evidence and a pile of conclusions and tasked with intuiting which evidence grafts onto which conclusion."); *see also Craft*, 539 F.3d at 674 ("If the claimant has a medically determinable mental impairment, then the ALJ must document that finding and rate the degree of functional limitation in four broad areas.").

Even more importantly, the ALJ omitted evidence from his step two analysis that directly contradicts his step two conclusions. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir.2009)). In this case, the ALJ's impermissible cherry-picking caused him to give great weight to the findings of one state agency consultant (Dr. Hudspeth) while discounting the findings of a second state agency consultant (Dr. Fyans).

9

In particular, Dr. Hudspeth – who reviewed Claimant's file at the reconsideration level – found that Claimant has only *mild* limitations in each paragraph B area. (R. 22). Conversely, Dr. Fyans – who reviewed Claimant's file at the initial level – found that Claimant has *moderate* limitations in concentration, persistence, and pace, (R. 322), and *moderate* limitations in his ability to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods, (R. 326). Dr. Fyans also concluded that Claimant's "adaptive and interpersonal and cognitive resources are capable of doing one and two step unskilled tasks," only. (R. 328).

The ALJ explained his decision to credit Dr. Hudspeth's findings over Dr. Fyans' by opining that Dr. Hudspeth's opinion was more consistent with the overall evidence. This explanation fails to provide the necessary logical bridge, however, where the ALJ selectively omitted evidence that directly supported Dr. Fyans' recommendation that Claimant be limited to one to two-step tasks. For example, the ALJ did not acknowledge Claimant's statement that he has difficulty concentrating and completing tasks, (R 197), nor did he address a note from Claimant's twelfth-grade teacher indicating that Claimant has "a very serious problem" carrying out multi-step instructions, (R. 203). And while the ALJ cited findings from Claimant's 2015 IEP indicating that Claimant "was able to listen to a story and answer comprehension questions and could verbalize his thoughts in a complete and coherent manner," (R. 22) (citing R. 271), he omitted the very next sentence of the same IEP, which indicated that Claimant "is able to follow *basic one and two step directions* independently," (R. 271) (emphasis added). *See O'Banion v. Commissioner of Social Security*, No. 1:20-cv-00354-SLC, 2021 WL 5711537, at *4 (N.D.Ind. Dec. 2, 2021) ("The ALJ impermissibly cherry-picked one line of evidence from a treatment note while ignoring evidence to the contrary."). By not addressing this evidence, which was

10

consistent with Dr. Fyans' findings and in conflict with the findings of Dr. Hudspeth, the ALJ impermissibly ignored a line of evidence supporting a finding of disability and made an error that requires reversal.

Additional examples of the ALJ's selective consideration of evidence can be found throughout his decision. First, while the ALJ admitted that Claimant scored "below average" on the Leiter International Performance Scale in 2016, (R. 22) (citing R. 344), he did not reference evidence that Claimant's overall cognitive functioning was found to be in the fourth percentile in 2010, according to the Wechsler Intelligence Scale, (R. 291), or that Claimant scored in the sixth percentile on the Kaufman Test of Educational Achievement in 2013, (R. 289). And while the ALJ repeatedly cited the fact that Claimant "does well in his classes overall" to support his findings, (R. 22) (citing R. 286), he failed to acknowledge that when Claimant was in ninth grade, he was functioning below grade level expectations in all core academic areas, (R. 290), or that when Claimant was in the twelfth grade, he was reading at a *third*-grade level and doing math at a *fifth*-grade level, (R. 259-60).

The Commissioner argues that the ALJ did not need to include evidence related to Claimant's delays in math and reading because "the ability to read at a third grade reading level and do math at a fifth-grade level does not significantly limit the ability to do basic work activities." (Dckt. #33 at 9). However, when the ALJ repeatedly relied on Claimant's academic success to support his findings, this sort of qualifying information was critical and the ALJ's omission of it constitutes "a classic case of 'cherry -picking' that the Seventh Circuit has denounced time and time again." *Newman v. Colvin*, 211 F.Supp.3d 1126, 1131 (N.D.Ind. 2016); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ was not permitted to 'cherry-pick' from these mixed results to support a denial of benefits.").

11

On remand, the ALJ must acknowledge the evidence supporting Dr. Fyans' finding that Claimant experiences moderate limitations in concentration, persistence, and pace, as well as any other evidence that weighs against his non-severity findings. If, in light of that evidence, the ALJ still feels that the "overall evidence" is more consistent with Dr. Hudspeth's finding that Claimant experiences only mild limitations, the ALJ should assess each category individually so that the Court might follow his or her reasoning between the evidence and the step two conclusions. *See Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (an ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review"), *quoting Scott*, 297 F.3d at 595; *see also O'Connor-Spinner*, 627 F.3d at 618.

**B.  The ALJ erred by failing to account for the limitations resulting from Claimant's learning disability when determining Claimant's RFC.**

Even if the ALJ had properly found Claimant's learning disability to be non-severe, he was still obligated to consider the limitations stemming from the learning disability when assessing Claimant's RFC. *See Denton*, 596 F.3d at 423. A "failure to fully consider the impact of non-severe impairments requires reversal." *Id.*; *see also Hovi v. Colvin,* No. 12-C-169, 2013 WL 3989232, at *16 (W.D.Wis. Aug. 2, 2013) ("Courts in this circuit have consistently held that an ALJ's unexplained failure to include even mild limitations in concentration, persistence, and pace in the RFC warrants remand.") (citing cases).

Here, the Commissioner asserts that the ALJ accounted for Claimant's learning disability in the RFC and "simply did not conclude that it warranted any restrictions in the [RFC] finding." (Dckt. #33 at 10). The Court disagrees. The ALJ never mentioned Claimant's learning disability in the RFC assessment, nor did he explain his decision not to include any functional restrictions related to Claimant's mild limitations.

12

The Commissioner argues that the ALJ's assessment was sufficient because the ALJ referenced: (1) Claimant's ability to listen to a story and answer comprehension questions, (2) his ability to verbalize his thoughts in a complete and coherent manner, and (3) his propensity to become frustrated when he is unable to hear an instruction. This evidence, however, speaks more to the limitations stemming from Claimant's hearing loss than from his learning disability.

The Commissioner also argues that the ALJ relied on Claimant's activities of daily living ("ADLs") to support his finding that no mental RFC restrictions were necessary. (Dckt. #33 at 9). While it is true that the ALJ cited Claimant's ADLs – including his ability to wash clothes and dishes, clean the house, sweep, take out the trash, go to the grocery store, use public transportation, prepare meals, mop, and care for his personal hygiene, (R. 24) – in the context of discussing Claimant's hearing loss in the RFC assessment, the ALJ never suggested that this evidence supported a finding that no mental restrictions were necessary. If the ALJ concluded that capabilities shown by Claimant's ADLs rendered it unnecessary to account for his mild mental limitations in the RFC, he was required to explain his conclusion to that effect. *See, e.g., Viviana R. v. Kijakazi*, No. 19-cv-7419, 2022 WL 3354840, at *5 (N.D.Ill. Aug. 12, 2022) ("[I]f the ALJ believed that the mild mental limitations did not merit a non-exertional limitation in the RFC, she was obligated to explain that conclusion."). The Court cannot infer that this was the ALJ's logic and, under the *Chenery* doctrine, neither can the Commissioner. *See Poole v. Kijakazi*, 28 F.4th 792, 796 (7th Cir. 2022) (noting that the *Chenery* doctrine "forbids the Commissioner from relying at this stage on a rationale that was not used by the agency").

The closest the ALJ came to addressing Claimant's learning disability in the RFC was his citation to Claimant's testimony that only his hearing loss affects his ability to work. (R. 23). There are three problems with the ALJ relying on this testimony to omit a discussion of

13

Claimant's learning disability at this stage of the analysis. First, regardless of Claimant's statement, the ALJ found that Claimant has mild limitations in each of the paragraph B criteria. Accordingly, he had a duty to account for those limitations in the RFC analysis. Second, it is conceivable that an individual who has never worked and has been diagnosed with a learning disability would not be fully aware of the effects that it has on his ability to work. As such, the ALJ should not have cited this subjective statement while omitting the opinions of medical professionals, Claimant's teacher, and Claimant's mother. Third, because Claimant appeared without counsel, the ALJ's reliance on Claimant's statement that only his hearing loss impaired his ability to work is especially problematic. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (noting the ALJ's enhanced duty to "scrupulously and conscientiously [ ] probe into, inquire of, and explore for all the relevant facts" when a claimant appears without counsel); *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) (finding there is no presumption that an unrepresented claimant has made his best case before the ALJ).

On remand, the ALJ must either incorporate into the RFC non-exertional restrictions that account for Claimant's limitations – whether mild or moderate – in the four areas of mental functioning, *or* explain why such restrictions are unnecessary. *See, e.g., Viviana R.*, 2022 WL 3354840, at *5 (citing cases); *John M. v. Kijakazi*, No. 19 cv 1595, 2022 WL 220384, *9-10 (N.D.Ill. Jan. 25, 2022); *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *3-4 (N.D.Ill. Jan. 28, 2019); *President v. Berryhill*, No. 17-C-4910, 2018 WL 4282053, at *3-4 (N.D.Ill. Sept. 7, 2018); *Alesia v. Astrue*, 789 F.Supp.2d 921, 933-34 (N.D.Ill. 2011) (remanding because the ALJ did not consider the impact of the claimant's non-severe depression, which caused mild limitations in concentration, persistence, or pace, in his RFC); *Koswenda v. Astrue*, No. 08-C-4732, 2009 WL 958542, at *5 (N.D.Ill. Apr. 2, 2009) (noting that even mild

limitations in concentration, persistence, or pace should have been included in hypothetical questions to the vocational expert).

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the Commissioner's decision to deny him SSI benefits, (Dckt. #29), is granted and the Commissioner's motion for summary judgment, (Dckt. #32), is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**ENTERED:** August 30, 2022

**Jeffrey I. Cummings**
**United States Magistrate Judge**